# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JACK R. PETERS, ) | |
| ) | Case No. 3:10-cv-00970 |
| Plaintiff, ) | Judge Nixon |
| ) | Magistrate Judge Brown |
| v. ) | |
| ) | JURY DEMAND |
| INTERSTATE WAREHOUSING, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Defendant Interstate Warehousing, Inc.'s Motion for Summary Judgment ("Motion") (Doc. No. 16), filed along with several supporting exhibits (Doc. Nos. 16-1 to 16-4), a Memorandum in Support (Doc. No. 17), and a Statement of Uncontested Material Facts (Doc. No. 18). Plaintiff Jack R. Peters has filed a Response in Opposition (Doc. No. 19), along with a Response to Defendant's Statement of Uncontested Material Facts (Doc. No. 20), and several exhibits (Doc. Nos. 21-1 to 21-4). Defendant has filed a Reply to Plaintiff's Response. (Doc. No. 22.) For the reasons given herein, the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND[1]

### A. Factual History

Beginning in June 2007, Plaintiff worked for Defendant in various capacities, namely as a picker, a forklift driver, and a warehouseman. (Doc. No. 19 at 1; Doc. No. 16-2 at 6-7.) On October 26, 2007, Plaintiff signed a form entitled "Handbook Acknowledgment." The form stated that Plaintiff's employment was terminable at will, he understood all of the rules and

---

[1] All facts are undisputed and taken from Plaintiff's Response to Statement of Uncontested Material Facts Filed by Defendant, Interstate Warehousing, Inc. (Doc. No. 20), unless otherwise noted.

1

policies contained within Defendant's employee handbook, agreed to abide by them, and realized that failure to do so could result in disciplinary action or termination. (Doc. No. 16-3 at 2.) Defendant's employee handbook states, in relevant part, that Defendant prohibits:

> The unlawful manufacture, transfer, possession, sale or use of alcohol or illegal drugs in the workplace, or while engaged in company business while off company property. Such conduct is also prohibited during non-work time to the extent that, in the opinion of Tippmann Group, it impairs an employee's ability to perform the job or threatens the reputation or integrity of the company.

(*Id.* at 3.)

Several years before beginning his employment with Defendant, Plaintiff actively used methamphetamines and participated in their manufacture. (Doc. No. 19 at 1.) Plaintiff was arrested for and pled guilty to possession of marijuana when he was eighteen years old. Plaintiff was also arrested for felony intent to sell methamphetamines in either 2003 or 2004, was convicted of misdemeanor possession of controlled substances, and served three months in jail as a result.

As part of the hiring process for his job with Defendant, Plaintiff completed an employment application on October 27, 2007. Plaintiff did not respond to a question on the application that asked, "have you ever committed or been convicted of a crime other than a minor traffic violation?" Below that question, the application read, "If yes, give dates, offenses, punishments, and outcome." The application required that Plaintiff initial certain paragraphs, including one verifying that:

> the information I have given is correct and complete, to the best of my knowledge; that I have not withheld nay [sic] information that a reasonable person would consider important; and that any misrepresentation or withholding of such facts, whether revealed before or after employment, will constitute cause for elimination from further consideration of this application or even for dismissal if I have already been employed.

Nowhere on his application for employment with Defendant did Plaintiff disclose his prior arrests or convictions.

On June 20, 2008, Plaintiff completed a second application for employment because the information on his first application was incomplete. A question on the second application asked if he had ever committed or been convicted of a crime. Plaintiff responded "no" to that question, and wrote "n/a" when prompted to supply additional information about any listed crimes. Plaintiff also initialed a paragraph on the application confirming that the information he provided was true and accurate.

While working for Defendant, Plaintiff acquired a history of disciplinary infractions. On January 16, 2008, Plaintiff received a written warning for loading the wrong pallet and was informed that further infractions could lead to further disciplinary action, including termination. Plaintiff also received disciplinary warnings for his absences on April 11, 2008, August 28, 2008, October 10, 2009, November 4, 2009, and on January 31, 2010.[2] Plaintiff also received a warning on October 7, 2008 regarding his performance, and on December 6, 2008, for having a bad attitude and not cooperating. Despite these infractions, Plaintiff was promoted to "lead employee" on September 15, 2008, and given a one dollar per hour raise.

In January of 2010, Plaintiff began using methamphetamine constantly for a period of approximately one to two weeks. (Doc. No. 19 at 1.) While the exact duration of the period during which Plaintiff used methamphetamine is disputed, the parties agree that January 31, 2010 is the last date on which Plaintiff used methamphetamine. Prior to this temporary period of drug use in January of 2010, the last occasion on which Plaintiff had used illegal drugs occurred seven years earlier.

---

[2] Although Defendant prepared a written warning in response to Plaintiff's failure to attend work on January 31, 2010, Plaintiff never received that written warning because Plaintiff reported his drug use to Defendant the following day, and sought Defendant's help in finding a rehabilitation program. (Doc. No. 16-1 at 4-5.)

On February 1, 2010, Plaintiff went to the office of Ben Hogue, Defendant's Human Resources Director, and told Hogue that he needed to speak with him. According to Hogue, when Plaintiff came to see him on February 1, 2010, he appeared disheveled, messy, and tired. Plaintiff, who was still high at the time of his meeting with Hogue, reported his drug use to Hogue during their meeting. Plaintiff admits to having used drugs for a week to two weeks prior to his meeting with Hogue. At the conclusion of his meeting with Plaintiff, Hogue gave Plaintiff the rest of the day off and told Plaintiff that Defendant would attempt to help him.

Two days after his meeting with Plaintiff, Hogue found a rehabilitation clinic for Plaintiff that accepted Defendant's insurance. Furthermore, Hogue arranged a work schedule that would enable Plaintiff to remain employed by Defendant while attending rehabilitation classes. Plaintiff met with Hogue on February 3, 2010 to review his new work schedule and the parameters of his rehabilitation program. Though Plaintiff was slated to attend classes at an outpatient clinic, he was still scheduled to work forty hours per week. Plaintiff was told that he was being relieved of his lead responsibilities in order to lighten his work load, but that he could still keep his extra lead pay.

Defendant let Plaintiff take February 1 and February 2 off of work. Plaintiff was not scheduled to work for Defendant on February 3. On February 4, 2010, Plaintiff called Hogue more than eight hours prior to his scheduled start time, and told him that he was still very tired and asked if he could take another night off of work. After consulting with Jarrod Weber, Defendant's operations manager, Hogue informed Plaintiff that he could take February 4, 2010 off, but that he would have to report to work on February 5, 2010. Plaintiff did report for work on February 5, 2010, but only worked from 10:00 p.m. to 2:43 a.m., rather than until 6:00 a.m. as scheduled. Plaintiff left work early complaining of chest pains.

Plaintiff did not work as scheduled on February 9, 2010, after calling Hogue and telling him that he was tired and almost falling asleep in his class. On February 10, 2010, a day on which he was scheduled to work, Plaintiff came to work and apologized for missing work the previous night. He also presented a doctor's note stating that he would have to miss work that night due to an illness.

Plaintiff was set on a modified work schedule and was scheduled to attend outpatient rehabilitation. (Doc. No. 19 at 2.) Plaintiff worked his modified schedule for approximately one week. (*Id.*) Weber had told Plaintiff's supervisor, Zach Ellis, that Plaintiff's schedule would be changing in order to accommodate his rehabilitation schedule. (*Id.*) Subsequently, on February 8, 2010, Ellis and Plaintiff engaged in a conversation. During the course of the conversation Ellis asked Plaintiff how he planned to pay for his rehabilitation regimen. (Doc. No. 19 at 2.) While Ellis avers that Plaintiff told him that he was "slinging dope" over the weekend to make enough money to pay for his rehabilitation course, Plaintiff denies that he told Ellis that he was manufacturing or selling drugs. (*Id.*) On February 9, 2010, Ellis told Hogue that Plaintiff had told him that he was selling drugs. (*Id.* at 3.) On February 11, 2010, Hogue told Weber what Ellis had told him. (*Id.*) Hogue and Weber subsequently called Zach Leister, Defendant's general manager, to inform him of Ellis's allegations.

On February 12, 2010, Plaintiff arrived at work, and was instructed by Ellis that he needed to meet with Weber and Leister. (Doc. No. 19 at 3.) When Plaintiff met with Weber and Leister, Leister asked Plaintiff if Ellis's allegations were true. (*Id.*) Leister also asked Plaintiff if he had made drugs, to which Plaintiff responded that he had indeed cooked drugs. (*Id.*) Plaintiff now avers that he believed that Leister's question referred to the distant past, and claims that when asked if he had cooked drugs he responded that he had cooked drugs a long time ago. (*Id.*)

5

Plaintiff, however, testified at his deposition that "they asked me if I had cooked drugs and I said yes." (Doc. No. 16-2 at 95.) Furthermore, Plaintiff never indicated to anyone present at the meeting that he was referring to the past when he responded that he had made drugs.

After Plaintiff admitted to having cooked drugs, Leister informed Plaintiff that he was terminated. (Doc. No. 19 at 3-4.) Defendant's stated reason for terminating Plaintiff was his violation of Defendant's Drug and Alcohol Policy. Following his termination, Plaintiff continued to seek alternate employment and did some work for his landlord in exchange for an offset in his rent. Plaintiff stopped attending rehabilitation classes, but also stopped using drugs.

Plaintiff filed a Complaint in this action on October 15, 2010, alleging that his termination was the result of impermissible discrimination against him for his alleged drug addiction, in violation his rights under the Americans with Disabilities Act (ADA). (Doc. No. 1.) Defendant denies that Plaintiff's alleged drug addiction was a factor in its decision to fire him.

*B. Procedural History*

Plaintiff filed his Complaint against Defendant on October 15, 2010. (Doc. No. 1.) Defendant filed its Motion for Summary Judgment on June 10, 2011 (Doc. No. 16), along with several supporting exhibits (Doc. Nos. 16-1 to 16-4), a Memorandum in Support (Doc. No. 17), and a Statement of Uncontested Material Facts (Doc. No. 18). Plaintiff filed a Response in Opposition on July 11, 2011 (Doc. No. 19), along with a Response to Defendant's Statement of Uncontested Material Facts (Doc. No. 20), and an Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment, consisting of excerpts from depositions (Doc. Nos. 21-1 to 21-4). Defendant filed a Reply to Plaintiff's Response on July 26, 2011. (Doc. No. 22.)

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment. *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the

7

Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

### III. ANALYSIS

#### A. ADA

The Americans with Disabilities Act (ADA) prohibits employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Title I of the ADA also imposes an obligation on employers to make reasonable accommodations to qualified individuals with disabilities unless doing so would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

In order to establish a claim for disability discrimination under the ADA, a plaintiff must provide either direct or indirect evidence of discrimination. Direct evidence is evidence that, if believed, compels the conclusion that discrimination was a motivating factor in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence does not require that the factfinder draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

In the absence of direct evidence, a plaintiff alleging disability discrimination in violation of the ADA must present indirect evidence subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (applying the *McDonnell Douglas* to an ADA employment discrimination case). Under the *McDonnell Douglas* analysis, the plaintiff

8

bears the burden of establishing a prima facie case of employment discrimination. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must prove that (1) he is disabled within the meaning of the ADA, (2) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) he suffered adverse employment action because of his disability. *E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 562 (6th Cir. 2001). If a plaintiff can establish a prima facie case, the employer must then offer a legitimate non-discriminatory reason for the discharge. *See McDonnell Douglas*, 411 U.S. at 802-03. If the employer offers a legitimate, non-discriminatory reason for the termination, the burden shifts back to the plaintiff, as he must then produce evidence and carry the burden of persuasion that the defendant's proffered reason is pretext. *Id.*

Under the ADA, a disability is defined as a "physical or mental impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(g)-(j). A major life activity is a basic action performed by an average person in the general population, and includes actions like performing manual tasks, physical movements and communication, breathing, thinking, communicating, and working. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1).

The ADA, however, provides only limited protection to individuals who suffer from drug or alcohol addiction. "Mere status as an alcoholic or substance abuser does not necessarily imply a 'limitation' under the second part of that definition." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (internal citations omitted). To prevail on an ADA claim, a recovering drug addict or alcoholic "must demonstrate [not only] that he was actually addicted to drugs or alcohol in the past, [but also] that this addiction substantially limit[s] one or more of his major life activities." *Rhoads v. Bd. of Educ. of Mad River Local Sch.*

9

*Dist.*, 103 F. App'x 888, 893 (6th Cir. 2004) (citing *Buckley v. Consol. Edison Co. of New York*, 127 F.3d 270, 274 (2d Cir. 1997)).

A plaintiff cannot prove that his drug use amounts to a disabling addiction merely by providing self-serving, conclusory statements that his drug use substantially limits his ability to perform a major life activity. *Rhoads*, 103 F. App'x at 893. Rather, "[a]t a minimum, medical evidence must be offered to substantiate the claimed [disability]." *Id.* Furthermore, "Individual[s] who [are] currently engaging in the illegal use of drugs" are expressly excluded from the term "individual with a disability under the ADA." *See* 42 U.S.C. § 12210(a); 29 U.S.C. § 705(20)(C)(i). The ADA, however, provides a "safe harbor" for individuals who "ha[ve] successfully completed a supervised drug rehabilitation program and [are] no longer engaging in the illegal use of drugs." 42 U.S.C. § 12210(b)(1); 29 U.S.C. § 705(20)(C)(ii)(I). Overall, "[t]he import of these provisions . . . is that drug addiction, like alcoholism, is recognized as a disease that can be disabling, but that current drug use disqualifies a person from protection under [the ADA]." *Gilmore v. Univ. of Rochester Strong Mem'l Hosp. Div.*, 384 F. Supp. 2d 602, 611 (W.D.N.Y. 2005) (citing *Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 46).

While no court has articulated a bright-line rule for determining when an individual is no longer "currently using drugs," as defined by the ADA, courts that have considered the issue have uniformly found that persons who have used drugs in the weeks and months prior to their termination were current drug users under the ADA. *See, e.g.*, *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1186 (9th Cir. 2001) ("[T]he 'safe harbor' provision applies only to employees who have refrained from using drugs for a significant period of time."); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 856 (5th Cir. 1999) ("Under the ADA, 'currently' means that the drug

10

use was sufficiently recent to justify the employer's recent belief that the drug abuse remained an ongoing problem.").

The ADA's legislative history is especially helpful in ascertaining Congress's intent with regard to those labeled "current drug users," as it explains that:

> The provision excluding an individual who engages in the illegal use of drugs from protection . . . is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the employment action in question. Rather the provision is intended to apply to a person whose illegal use of drugs occurred recently enough to justify a reasonable belief that a person's drug use is current.

H.R. Rep. No. 101–596, at 69 (1990) U.S.C.C.A.N. 565, 578 (1990). The Court finds that the ADA's legislative history unequivocally indicates that Congress meant to exclude individuals who used drugs in the weeks prior to their termination from protection under the ADA.

1. Actual Disability Discrimination Claim

Defendant argues that Plaintiff has not established a prima facie case of discrimination under the ADA. Defendant first argues that Plaintiff is not a qualified individual with a disability, and that he is therefore not entitled to any relief under the ADA. (Doc. No. 17 at 4.) In support of that assertion, Defendant claims that there is no evidence that Plaintiff was substantially impaired in a major life activity. (*Id.* at 6.) Defendant also claims that Plaintiff does not qualify as an individual with a disability because his drug use renders him a "current" drug user, thus disqualifying him from ADA protection. (*Id.* at 7.) Lastly, Defendant claims that it had a legitimate, nondiscriminatory reason to terminate Plaintiff. (*Id.* at 8.)

Plaintiff argues that he is a qualified individual with a disability, and therefore entitled to protection under the ADA. (Doc. No. 19 at 6.) Plaintiff also claims that he does not fall within the definition of a "current drug user" because he stopped using drugs after asking Defendant for help. (*Id.* at 7.) Plaintiff further argues that a genuine dispute of fact exists as to whether

11

Defendant's proffered reason for Plaintiff's termination was legitimate, nondiscriminatory, and not pretext. (*Id.* at 9.)

The Court finds that Plaintiff was not protected by the ADA at the time that Defendant terminated him, as Plaintiff has failed to produce evidence supporting his claim that that he was disabled.

Plaintiff's conclusory claims that he is a drug addict are inadequate to establish that Plaintiff is disabled. In order to qualify as disabled under the ADA, a plaintiff's disability must substantially impact a major life activity, or be perceived as doing so. *See Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 566 (6th Cir. 2009) (internal citations omitted). Plaintiff has not provided any facts showing any limitations of major life activities caused by his alleged drug addiction. In fact, Plaintiff's deposition testimony contradicts his claims of being limited in a major life activity. For example, Plaintiff testified that after he was terminated from his position with Defendant, he looked for other employment and even worked for his landlord in exchange for a reduction in his rent. (Doc. No. 21-2 at 10.)

Nowhere in his pleadings has Plaintiff specifically identified a life activity that he was substantially limited in performing. In his Response, Plaintiff claims that he was exhausted, and suffered from memory loss and blackouts while he was abusing drugs. (Doc. No. 19 at 6.) However, the pages in the record to which Plaintiff cites in support of this claim do not bear this assertion out. Plaintiff goes on to claim that he missed several days of work due to exhaustion while recovering from withdrawal symptoms. (*Id.*) While Plaintiff did miss several days of work in early February of 2010, his claim that he missed those days due to exhaustion caused by withdrawal symptoms is not supported by any citations to the record. Plaintiff also claims that his drug use "interfered with his cognitive ability to reason and to make good decisions" and that

he was unable to sleep or work. (Doc. No. 19 at 6.) Plaintiff offers no citations to the record for those contentions either. Plaintiff further claims that the rehabilitation program he attended considered him an "addict." (Doc. No. 19 at 7.) Plaintiff cites to a page in the record in support of this claim, but that page does not in fact support Plaintiff's contention. Because Plaintiff's claims are not supported by any evidence in the record, the Court finds that Plaintiff has not identified any major life activity that was substantially impaired by his drug use. Plaintiff has thus failed to establish a prima facie case of discrimination based on an actual disability.

Local Rule 56.01(c), which establishes the guidelines for a party opposing a motion for summary judgment states that "each disputed fact must be supported by specific citation to the record." Plaintiff, in his Response brief, has alleged facts not supported by specific citations to the record. Plaintiff has thus failed to abide by the rule. The Court therefore disregards any such factual allegations made by the Plaintiff. When a motion for summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The Court also finds that Plaintiff cannot establish that he was an "individual with a disability" under the ADA on February 12, 2010, the date on which his employment was terminated, because Plaintiff was a "current drug user." Plaintiff was terminated twelve days after he had last used illegal drugs. In light of the ADA's explicit exclusion of persons who have used drugs in the weeks prior to their termination, the Court cannot find that Plaintiff qualifies for protection under the ADA. *See Tracy P. v. Sarasota Cnty.*, No. 05-cv-927-T-27EAJ, 2007 WL 951740, at *5 (M.D. Fla. Mar. 28, 2007) (finding the plaintiff not protected under the ADA in light of his contemporaneous drug use because "current drug users are not protected and

13

whether a plaintiff alleges that he was discriminated against because he had a record of drug addiction or was perceived as being a drug addict is irrelevant, if he was currently abusing drugs or alcohol."). Because Plaintiff had not refrained from the use of drugs for a sufficient length of time, he is not entitled to protection under the ADA. Further, Plaintiff does not qualify for protection from the ADA's safe harbor provision, which protects individuals who have successfully completed a supervised drug rehabilitation program and are no longer engaged in the use of drugs, because he had not successfully completed a supervised drug rehabilitation program at the time of his termination.

Plaintiff has not addressed Defendant's argument that he qualifies as a current drug user. In response to Defendant's contention that he qualifies as a current drug user, Plaintiff simply states that he stopped using drugs after seeking Defendant's help. (Doc. No. 19 at 7.) Plaintiff's request for assistance from Defendant and his subsequent cessation of drug use do not make a difference in the Court's determination of whether he was "currently using drugs" at the time of his termination because neither of those actions change the fact that Plaintiff had used drugs less than two weeks before he was terminated.

In sum, Plaintiff has failed to produce evidence sufficient to establish that he was disabled. *See Rhoads v. Bd. Of Educ. Of Mad River Local Sch. Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004) (affirming district court's grant of summary judgment to defendant on the basis that plaintiff had not presented evidence sufficient to demonstrate that she was disabled). Because Plaintiff cannot show that he is disabled within the meaning of the ADA at the time that he was terminated, his prima facie case fails, and Defendant is entitled to summary judgment on Plaintiff's ADA discrimination claim. The Court does not therefore reach the other elements of Plaintiff's ADA claim.

2. Perceived Discrimination Claim

In addition to defining an "individual with a disability" as any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, the ADA also defines an individual with a disability as someone who is regarded as having such an impairment. 42 U.S.C. § 12102(1)(c). An individual meets the requirement of being "regarded as having such an impairment" if the individual establishes that he has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). The Sixth Circuit has stated that "whether a plaintiff was 'regarded as' disabled is 'a question embedded almost entirely in the employer's subjective state of mind' such that 'proving the case becomes extraordinarily difficult.'" *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 567 (6th Cir. 2009) (quoting *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)). Moreover, the ADA provides protection for employees who are erroneously regarded as current illegal drug users. *See* 42 U.S.C. § 12114(b)(3). The erroneous perception of being an illegal drug user is to be treated like any other perception of a disability. *See* 42 U.S.C. § 12102(2); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

The only evidence that Plaintiff points to in support of his claim that Defendant regarded him as disabled are the facts that Defendant assisted Plaintiff with finding a rehabilitation program, Defendant "scheduled rehabilitation to treat Plaintiff's drug addiction" (Doc. No. 20 ¶ 52), and the fact that Hogue sent Plaintiff home to get some sleep after Plaintiff approached him about his problem. Plaintiff concludes that these facts "alone suggest[ ] that Defendant believed Plaintiff had a serious problem." (Doc. No. 19 at 8.)

Plaintiff in no way explains how these facts demonstrate that Defendant regarded him as disabled under the ADA. None of Plaintiff's evidence indicates that any of Defendants' employees either considered Plaintiff to be impaired in any way, or questioned Plaintiff's ability to work in light of his recent drug use. In fact, it is undisputed that Defendant expected Plaintiff to work while attending rehabilitation classes.

Even viewing the facts in the light most favorable to the Plaintiff, the Court does not find that a genuine issue of material fact exists as to whether Defendant considered Plaintiff to be disabled. Plaintiff has not provided any facts showing that he was subjected to an action prohibited by the ADA because of a perceived physical or mental impairment. In his Response, which attempts to establish grounds for his "regarded as disabled" claim, Plaintiff alleges that Hogue "was also concerned that Plaintiff's drug use would interfere with his ability to show up for work and lead to his termination," and cites to a page in the record that refers to Plaintiff's work performance in the period prior to February of 2010. The record indicates that Defendant was not aware of Plaintiff's drug use in the period before February of 2010; therefore, Plaintiff's proffered evidence does not create a genuine issue as to whether Defendant regarded Plaintiff as having a disability. Plaintiff's attempt to mislead the Court by misrepresenting evidence in the record in no way offers support for his claims.

Furthermore, the fact that Defendant knew, in the period after February 1, 2010, that Plaintiff had used drugs does not, in and of itself, rise to the level of a belief that Plaintiff was disabled. *See Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 568 (6th Cir. 2009) ("That the defendants were aware of [plaintiff's] health issues does not support a conclusion that they misperceived [her] physical abilities as impaired."). The Court also finds that the accommodations that Defendant made in order to facilitate Plaintiff's rehabilitation from drug

use similarly do not demonstrate that Plaintiff was subjected to an action prohibited by the ADA because of an actual or perceived impairment.

Plaintiff has not produced any evidence to prove that Defendant perceived him to be disabled. Therefore, Plaintiff has not established that Defendant regarded him as disabled. The Court grants summary judgment to Defendant on Plaintiff's perceived disability ADA claim.

### 3. Failure to Accommodate Claim

A plaintiff alleging a failure to accommodate under the ADA can establish a prima facie case by showing that (1) he is disabled, (2) he is qualified for the position with or without an accommodation, (3) the employer knew or had reason to know about the disability, (4) an accommodation was requested, and (5) the employer refused to provide the necessary accommodation. 42 U.S.C. § 12112(b)(5)(A); *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004). Once a plaintiff establishes a prima facie case of a failure to accommodate, the burden shifts to the employer to show that the employee could not be reasonably accommodated. *Id.*

Here, Plaintiff argues that although Defendant initially accommodated him by helping him find a rehabilitation program and rearranging his work schedule, "Defendant's termination of Plaintiff made [these] accommodations moot and worthless to Plaintiff." (Doc. No. 19 at 10.) Plaintiff ostensibly concludes that Defendant therefore failed to accommodate Plaintiff's alleged disability. (*Id.*)

The Court finds that Plaintiff's failure to accommodate claim fails as a matter of law because, as discussed above, Plaintiff is not disabled under the ADA. Because Plaintiff is not disabled, his prima facie failure to accommodate case fails. The Court concludes that Defendant is therefore entitled to summary judgment on Plaintiff's failure to accommodate claim.

### B. Tennessee Disability Act Claim

Plaintiff's Complaint alleges that Defendant violated the Tennessee Disability Act (TDA). The TDA prohibits employment discrimination on the basis of disability in the state of Tennessee. Tenn. Code Ann. §§ 8–50–103 to 104. The TDA follows the ADA in defining a disability as a physical or mental impairment that substantially limits one or more of the person's major life activities. *Gaines v. Western Exp., Inc.*, No. 3:11-0452, 2011 WL 3703723 at *3 (M.D. Tenn. Aug. 22, 2011) (citing Tenn. Code Ann. § 4–21–102(3)(A)). Claims brought under the TDA are analyzed under the same principles as those utilized by the ADA. *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn Ct. App. 2004); *White v. Interstate Distributor Co.*, No. 3:11-5063, 2011 WL 3677976 at *4 n.1 (6th Cir. Aug. 23, 2011). Because Plaintiff has failed to establish that he is entitled to relief under the ADA, his TDA claim also fails.

### b. CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment is **GRANTED**.

It is so ORDERED.

Entered this the __29th____ day of December, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT